J-S38043-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF T.S. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: P.G., JR., NATURAL | : | |
| FATHER | : | No. 367 WDA 2018 |

Appeal from the Order Entered February 28, 2018
in the Court of Common Pleas of Fayette County
Orphans' Court at No(s):  44 Adopt 2017

BEFORE:   BOWES, NICHOLS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                FILED JULY 20, 2018

P.G., Jr. (Father) appeals from the order entered February 28, 2018, in the Court of Common Pleas of Fayette County, which terminated involuntarily his parental rights to his minor son, T.S., born in May 2016.  We affirm.

Child's biological parents are Father and M.S. (Mother).[1]  Fayette County Children and Youth Services (CYS) became involved at Child's birth because Mother tested positive for drugs.  Mother was arrested four days after Child's birth for a parole violation, and she was incarcerated in the Allegheny County Jail.  At that time, she made arrangements with a friend to care for Child upon his discharge from the hospital.  Child was discharged two weeks after his birth to that friend.  However, two days later, that friend cancelled a medical appointment for Child, and CYS obtained an order for emergency protective custody of Child.  Child was adjudicated dependent on May 25,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] In November 2017, Mother voluntarily terminated her parental rights to Child.

2016, and was placed with his maternal grandmother, C.K., and step-grandfather. Child was not placed with Father because Father was incarcerated.

Father is currently 37 years old and has a lengthy criminal history. He has been in jail for all but 7 months since he was 19 years old. He is currently serving a 2 ½ to 5 year term of incarceration for robbery. His maximum sentence expires on July 25, 2018.[2]

Upon Child's adjudication, CYS caseworker, Leigh Ann David, sent a family service plan (FSP) to Father. Father was required to, inter alia, "register for and participate in and successfully complete parenting classes," "[s]ubmit to all requests for drug tests," and "sign any and all releases for providers and agencies that he's been involved with for treatment." N.T., 2/28/2018, at 5. Father also had a series of goals to complete upon his release from incarceration. According to CYS, Father was not cooperative with participating in programs while incarcerated, has not responded to mail sent by CYS, and has only sent one letter, in February 2017, to Child.

Thus, on May 26, 2017, CYS filed petitions to terminate the parental rights to Child of both Mother and Father. A hearing was held initially on

_____

[2] Father is serving the maximum due to his having left a halfway house without permission upon being paroled initially.

November 20, 2017.[3]  That hearing was continued until February 28, 2018. At that hearing, the orphans' court heard testimony from David, C.K., Father, and paternal grandmother.[4]

According to David, at the time of the hearing, Father had still not participated in an approved parenting class while incarcerated.  Days before the hearing, David received a letter that Father had been participating in an "inmate[-]run group" as of December 6, 2017.  N.T., 2/28/2018, at 6.  In addition, Father had completed a number of "programs" prior to Child's birth. Id.  David testified that Father had not signed any releases for records regarding any mental health or drug treatment programs he may have attended. Id. at 8.  Furthermore, Father did not correspond with CYS when requested.

Father testified that he regularly inquired of C.K. about Child's welfare. Father claimed he did not send any gifts to Child because C.K. did not respond

_____

[3] That transcript is not part of the certified record. However, according to CYS, "Father started to voluntarily terminate his parental rights on November 20, 2017, the same date that [M]other did.  However, during his testimony, [F]ather had a change of heart and the court permitted him to withdraw his voluntary termination and to contest the matter." CYS's Brief at 4.

[4] At both the hearing and on appeal, Child has been represented by a guardian ad litem (GAL).  The GAL agrees with the orphans' court that "[t]ermination of parental rights of [Father] is in the best interest of [Child]." GAL's Brief at 6 (unnumbered).  This Court has held that a child's right to counsel pursuant to 23 Pa.C.S. § 2313, is satisfied by a lawyer serving as a GAL if there is no conflict between a child's best and legal interests, which is the case when a child is unable to express a preferred outcome.  In re D.L.B., 166 A.3d 322, 329 (Pa. Super. 2017).  Here, Child was not quite two years old at the time of the hearing.  Thus, there was no such conflict.

- 3 -

to his letters. With regard to CYS, Father testified that he doesn't "trust" David. Id. at 29. He claimed that David "didn't really like" him and "kept trying to get [him] to sign over [his] rights voluntarily." Id. Therefore, he refused to correspond with her. Father also testified that he had successfully completed drug and alcohol classes and had also completed "parenting classes that you don't receive a certificate from." Id. at 31. Father also testified that he had signed the releases. Id. at 33. Father acknowledged that he has not "had a chance to even meet" Child yet, but believes that if his rights are not terminated, he will "get to see [Child] more." Id. at 33.

Additionally, C.K. testified about her relationship with Child. Child calls her "Mum" and her husband, "DaDa." Id. at 23. She maintains a good relationship with paternal grandmother,[5] and testified that if the orphans' court permits her to adopt Child, she would still continue to maintain contact with Father and his family.[6] Id. at 24. Moreover, C.K. testified that Father sent a letter to her in July 2016 where Father asked her to give Child to paternal grandmother. Id. at 23.

Based on the foregoing, on February 28, 2018, the orphans' court entered a decree terminating Father's parental rights to Child. Father timely filed a notice of appeal along with a concise statement of errors complained

---

[5] Paternal grandmother also testified at the hearing and confirmed that she and C.K. maintained a positive relationship.

[6] In fact, C.K. testified that as "long as [Father is] clean and sober," and even while he is incarcerated, she would permit him to contact Child even if she adopts Child. N.T., 2/28/2018, at 24, 25.

of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The orphans' court filed an opinion on April 24, 2018.

On appeal, Father asks this Court to review whether the record contains sufficient evidence to sustain CYS's burden of proof. Father's Brief at 3.

We address this issue mindful of our standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child ....

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to subsections 2511(a)(2), (5), (8), and (b).[7] We need only agree with the court as to any one subsection of 2511(a) in order to affirm.[8] In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Here, we analyze the court's decision to terminate under subsection 2511(a)(2), which provides as follows.

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

---

[7] Father makes no effort to challenge the termination of his parental rights pursuant to subsection 2511(b) in the argument section of his brief. Therefore, we conclude that Father waived any challenge to subsection 2511(b), and we focus solely on subsection 2511(a). See In re M.Z.T.M.W., 163 A.3d 462, 465-66 (Pa. Super. 2017) (holding that the appellant waived any challenge to subsections 2511(a)(2) and (5) by failing to develop an argument in her brief, and by conceding that the agency presented clear and convincing evidence).

[8] We note that the orphans' court erred by concluding that Father's parental rights could be terminated under subsections (a)(5) and (8). Both of these subsections require that the subject child has "been removed from the care of the parent by the court or under a voluntary agreement with an agency" in order to be applicable. 23 Pa.C.S. § 2511(a)(5), (8). Because Child was never in Father's care due to his incarceration, and therefore was not removed from Father's care, his parental rights cannot be terminated under those subsections. See In re C.S., 761 A.2d 1197, 1200 (Pa. Super. 2000) (en banc) (concluding that termination was inappropriate under subsections 2511(a)(5) and (8) "because the record reflects that C.S. was never in [the a]ppellant's care and, therefore, could not have been removed from his care").

abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). We also bear in mind that our Supreme Court has clarified the extent to which an orphans' court may rely upon a parent's incarceration when terminating parental rights. In re Adoption of S.P., 47 A.3d 817 (Pa. 2012). It is now settled that "a parent's incarceration is relevant to the [sub]section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." In re A.D., 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

Father contends that even though "he failed to complete his goal plan, he utilized the limited resources that were available at the prison and sought

to maintain a bond with [Child] during his incarceration." Father's Brief at 15. However, as the orphans' court concludes, "[t]his case is deeper than just an instance of an incarcerated parent." Orphans' Court Opinion, 4/24/2018, at 7. Father has been imprisoned consistently for his entire adulthood. As recounted by David at the hearing, Appellant pled guilty in 2002 to robbery of a motor vehicle and was sentenced to 3½ to 7 years of incarceration. N.T., 2/28/2018, at 10. Since that time, he has either been convicted of or pled guilty to receiving stolen property, fleeing, terroristic threats, simple assault, intimidation of witnesses, theft, unauthorized use of a motor vehicle, and accident involving death or injury. Id. at 11. His most recent charges, possession of firearms and drug paraphernalia, occurred in 2013. Id. Moreover, as the orphans' court points out, even when Father is released from prison, he would not be prepared to parent Child.[9]

> Upon release, Father would still have to find appropriate housing, maintain employment, undergo mental health [evaluations], as well as drug and alcohol evaluations, and complete parenting classes. Given his recidivist record of crime and spending nearly half of his life behind bars, [the orphans' court] finds and so holds that the best interest of [Child] is to not prolong permanency.

Orphans' Court Opinion, 4/24/2018, at 4.

The orphans' court's conclusions are supported by the record, and we discern no error or abuse of discretion. The record confirms that Father is

_____

[9] At the hearing, Father essentially acknowledged that he is not interested in parenting Child; rather, he "just want[s] to be in [Child's] life." N.T., 2/28/2018, at 33. He testified that he is contesting CYS's petition because he believes if he "fight[s], [he will] get to see him more." Id.

- 8 -

incapable of parenting Child now and in the foreseeable future, and that Father cannot or will not remedy his parental incapacity. Father has been incarcerated almost continuously during his adult life. Father has never acted as a parent for Child at any point in his life, and it is clear that Father will not be able to act as Child's parent at any point in the foreseeable future. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006). Moreover, the orphans' court was well within its discretion when it relied on Father's repeated periods of incarceration, as well as his apparent incorrigibility, as its principal reasons for terminating his parental rights. In re Adoption of W.J.R., 952 A.2d 680, 687 (Pa. Super. 2008) (affirming trial court's determination that the father's "repeated pattern of criminal activity and his failure to comply with his FSP goals satisfies the requisites of incapacity, abuse, neglect or refusal of the parent").

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child involuntarily. Therefore, we affirm the court's February 28, 2018 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   7/20/2018